**THE FRANCHISE FIRM LLP**
225 Wilmington West Chester Pike, Suite 200
Chadds Ford, Pennsylvania 19317
T: (215) 965-1553
Attorneys for Plaintiffs, Ghost Kitchens International Inc.,
GKA Franchising Inc., and Ghost Kitchens America Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GHOST KITCHENS INTERNATIONAL INC. f/k/a GHOST KITCHEN BRANDS INC., GKA FRANCHISING INC., and GHOST KITCHENS AMERICA INC., | Civil Action No.: |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| SPECTRA GLOBAL CUISINE LLC a/k/a SPECTRA GLOBAL CUISINE, INC., SPECTRA-SAHARA PARTNERS, LLC, GENX CAPITAL, LLC, GENX INTERNATIONAL, INC., THOMAS Y. LEE, and CINDY T. TRAN, | |
| Defendants. | |

Plaintiffs, Ghost Kitchens International Inc. f/k/a Ghost Kitchen Brands Inc.,

GKA Franchising Inc., and Ghost Kitchens America Inc., by and through counsel,

alleges for its Complaint against Defendants, Spectra Global Cuisine, LLC a/k/a

Spectra Global Cuisine, Inc., Spectra-Sahara Partners, LLC, GenX Capital

Capital, LLC, GenX International, Inc., Thomas Y. Lee, and Cindy T. Tran, as follows:

## THE PARTIES

1. Ghost Kitchens International Inc. f/k/a Ghost Kitchen Brands Inc. is a corporation incorporated and existing under the Business Corporations Act (Ontario), with a principal place of business in Ontario, Canada.

2. GKA Franchising Inc. is a corporation incorporated and existing under the laws of the State of Delaware, with a principal place of business in Rochester, New York.

3. Ghost Kitchens America Inc. is a corporation incorporated and existing under the laws of the State of Florida, with a principal place of business in Ontario, Canada.

4. Spectra Global Cuisine, LLC a/k/a Spectra Global Cuisine, Inc. is a limited liability company organized under the laws of the State of Wyoming, with a principal place of business in Irvine, California. Upon information and belief, the members of Spectra Global Cuisine, LLC are Thomas Y. Lee and Cindy T. Tran, both of whom are residents of the State of California.

5. Spectra-Sahara Partners, LLC is a limited liability company organized under the laws of the State of Nevada, with a principal place of business in Irvine, California. Upon information and belief, the members of Spectra-Sahara

Partners, LLC are Thomas Y. Lee and Cindy T. Tran, both of whom are residents of the State of California.

6.     GenX Capital, LLC is a limited liability company organized  and existing under the laws of the State of Nevada, with a principal place of business in Irvine, California.

7.      GenX International, Inc. is a corporation incorporated  and existing under the laws of the State of Delaware, with a principal place of business in Irvine, California

8.     Thomas Y. Lee is an individual and resident of the State of California.

9.     Cindy T. Tran is an individual and resident of the State of California.

## JURISDICTION AND VENUE

10.     The Court has original subject matter jurisdiction pursuant to the Lanham Act, 15 U.S.C. § 1051, et seq., and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(1), and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the Lanham Act and the DTSA.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1319 because certain Defendants expressly agreed in writing in the Area Representative Agreement (defined below) that any action between the parties could be brought

exclusively in this Court, and they irrevocably consented, and waived any objection, to jurisdiction of and venue in this Court.

## FACTUAL BACKGROUND

## The Ghost Kitchen Brands System

12.　Started in Ontario, Canada, Ghost Kitchens International Inc. ("GKI") is the international arm of the Ghost Kitchen Brands franchise system, whereby franchisees are licensed the opportunity to operate a ghost kitchen or a food hall establishment providing dishes from one or more restaurant concepts that are officially associated and licensed to GKI (or its affiliate).

13.　GKA Franchising Inc. ("GKA") is the United States arm of GKI, offering franchising opportunities throughout the United States for the operation of ghost kitchens/food halls.

14.　GKA also operates an Area Representative franchise model, whereby Area Representatives recruit and train franchisees, on behalf of GKA, in exchange for retaining a portion of the unit franchisee's initial franchise fee and monthly royalties.

15.　GKA has exclusive relationships with certain brands and businesses, including, but not limited to, a relationship with Walmart, whereby GKA is permitted (and in some instances required) to open food halls in Walmarts throughout the United States.

**The Agreements and Relationship between Plaintiffs and Defendants**

16.     In or about early-Summer 2023, GKI and GKA were introduced to Thomas Y. Lee ("Lee"), a self-professed serial entrepreneur and restauranteur regarding potentially investing in GKI or an affiliate thereof.

17.     On or about August 5, 2023, GKI entered into a "Common Share Financing" Agreement with Spectra Global Cuisine, LLC ("SGC") and Spectra-Sahara Partners, LLC ("SSP"), "through their principal, Thomas Y Lee," to make an investment in GKI of $14,000,000 (the "Financing Agreement").

18.     An initial payment of $3,500,000 was made. For the remainder, a payment schedule was agreed to as follows:

| First Tranche | Second Tranche |
|---|---|
| Jan 15: $750,000 | Apr  15: $700,000 |
| Feb 15: $750,000 | May 15: $700,000 |
| Mar 15: $2,000,000 | Jun  15: $2,100,000 |

19.     As part of the Financing Agreement, GKI agreed to assign $10,500,000 of the Investment to the right of SGC to franchise the remaining United States markets (as described in the Financing Agreement), with the remaining $3,500,000 representing a ten percent (10%) equity stake in GKI on behalf of SSP.

20.     Shortly following entry into the Financing Agreement, and at Defendants' urging and direction, GKA expended substantial amounts of capital which otherwise would not have been spent.

21.     This capital was spent on additional technology, staffing, and substantial travel, including the complete focus of GKA's (and GKI's) entire management team on Defendants' growth and expansion.

22.     Notwithstanding, SGC, SSP, and Lee breached their obligations thereunder, after which the parties renegotiated the terms of the payment schedule to GKI.

23.     Such renegotiations were the good faith efforts of Plaintiffs to support Defendants, who misled Plaintiffs into continuing to spend at an arbitrarily-high rate.

24.     As a result of Defendants' misdeeds and misleading behavior, Plaintiffs continued to actively (and aggressively) support Defendants, at great financial harm, on the expectation that Defendants would honor their contractual obligations (and word) and fulfill their promises to Plaintiffs.

25.     As part of the revised agreement, and pursuant to a verbal agreement, dated December 2023, the parties intended Lee to serve as the putative Chief Executive Officer of w, and for Defendants, jointly and severally, to operate the expansion of the brand to the markets assigned to Defendants, and beyond.

26.     Defendants promised to aggressively promote and expand the business and requested that GKA spend aggressively to support same.

27.     Specifically, Defendants' business plan submitted to Plaintiffs stated:

Goal for 2024
1st Q   50 + including existing ones.  Rebuilding and fine tuning.
2nd Q  50+
3rd Q  50+
4th Q  50+

Budget
  • Minimum 3.5M budget. Paid quarterly preferred so I can plan/budget ahead.

28.     In furtherance of these efforts, GKA expended a tremendous amount of capital – at Defendants' direction and request – which otherwise would not have been spent and, now that Defendants have breached the various agreements described herein, is of little to no value.

29.     Further, as part of the verbal agreement described above, Ghost Kitchens America Inc. ("GKAmerica") or its affiliate GKI agreed to provide Defendants with $750,000 per calendar quarter in working capital to be used for GKAmerica's operations.

30.     This working capital was to be used to support GKAmerica's operations and not for sales activities.

31.     On or about January 15, 2024, GKAmerica remitted $750,000 in working capital to Defendants, none of which was used in support of GKAmerica's operations.

32.     Beyond financing, Plaintiffs, collectively, also provided full transparency to Defendants, including Plaintiffs' proprietary and confidential information, and trade secrets otherwise protected from disclosure.

**The Area Representative Agreement**

33.     As a result of the Financing Agreement, on or about January 17, 2024, GKA and GenX Capital, Inc. ("GenX"), entered into an Area Representative Agreement (the "ARA") whereby GenX would serve as the Area Representative of the Ghost Kitchen system throughout the entire United States.

34.     The ARA included post-termination non-competition obligations, among other post-termination obligations, as set forth therein.

**The One Kitchen Brand Conversion**

35.     As part of GenX's entry into the ARA, and its intended role as Area Representative for the United States, the parties agreed that GKI and GKA would convert from using the "GHOST KITCHEN BRANDS" trademark to the trademark "ONE KITCHEN."

36.     Specifically, the parties agreed that GKI (or an affiliate thereof) would file an application for the ONE KITCHEN trademark, and the parties would convert any existing GHOST KITCHENS to ONE KITCHEN, and open all new food halls as ONE KITCHEN locations.

37. Notwithstanding this agreement, on or about August 4, 2023, unbeknownst to Plaintiffs at the time, SGC filed a trademark application for ONE KITCHEN, U.S. Serial No. 98117993 (the "Spectra Application").

38. The Spectra Application was filed on an intent-to-use basis.

39. Upon learning of SGC's actions, and at the demand of Plaintiffs, SGC entered into a Trademark Acquisition Agreement ("Purchase Agreement") with Ghost Kitchens America, Inc. ("GKAmerica") under which GKAmerica agreed to purchase the ONE KITCHEN trademark together with all associated goodwill.

40. As the Spectra Application was filed as an intent-to-use application with the United States Patent and Trademark Office ("USPTO"), it cannot be assigned until it is used in commerce in the U.S., so the Purchase Agreement had two stages.

41. At present, GKAmerica holds an exclusive license to the ONE KITCHEN trademark.

42. Thereafter, upon use of the ONE KITCHEN trademark and filing and acceptance of a specimen of use with the USPTO, the Spectra Application will automatically be assigned to GKAmerica under the Purchase Agreement.

43. Thus, at present, the exclusive rights to the ONE KITCHEN trademark lie with GKAmerica, and no other party(ies).

**Defendants' Violative Behavior**

44.    Starting in mid-March 2024, Defendants (including GenX International, Inc. ("GenX Int'l")) took steps in violation of the Financing Agreement, the ARA, and the Purchase Agreement, and in violation of applicable federal and common law.

45.    Specifically, Defendants covertly took steps to transition away from Plaintiffs and towards conduct whereby they would compete directly with Plaintiffs.

46.    More specifically, as recently admitted by Lee:



47.    Defendants' conduct includes competing directly with Plaintiffs, using Plaintiffs' relationships, Plaintiffs' contracts and contacts, and (admittedly) usurping Plaintiffs' relationship with Walmart.

48.    This included on March 28, 2024, wherein a representative of Defendants confirmed Defendants' intention to move forward with One Kitchen – including the trademark and the model of multiple brands.

49.     Defendants have also made clear that they intend to use the One Kitchen trademark, despite GKAmerica's sole and exclusive right to use same.

**The Notice of Termination**

50.     As a result of Defendants' conduct, Plaintiffs took the following actions:

a.     on March 20, 2024, GKAmerica terminated Defendants' management relationship with GKAmerica;

b.     on March 20, 2024, removed Lee from his post as a director of GKI;

c.     on March 25, 2024, Plaintiffs demanded return of the $750,000 improperly retained by Defendants, which has not been returned as of the date of this filing;

d.     on April 1, 2024, GKA terminated the ARA for cause (including, but not limited to, attempting to improperly assign a portion of his ARA), noting that GenX and Lee, individually, are bound by the post-termination non-competition obligations set forth in the ARA.

51.     Despite these terminations, notices, and demands, it has become clear that Defendants intend to continue operating a competitive business, using Plaintiffs' intellectual property and proprietary and confidential inforamtion, in violation of federal and common law.

## COUNT I
## BREACH OF CONTRACT – FINANCING AGREEMENT
### (by GKI against SGC, SSP, and Lee)

52.     Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

53.     By way of the Financing Agreement, a duly-executed and valid contract existed between GKI, on the one hand, and SGC, SSP, and Lee, on the other hand.

54.     SGC, SSP, and Lee's actions, as described above, constitute material breaches of the Financing Agreement.

55.     As a direct and proximate result of SGC, SSP, and Lee's breaches, GKI has been damaged in an amount to be proved at trial.

56.     As a direct and proximate result of SGC, SSP, and Lee's breaches, and in accordance with the Financing Agreement and applicable law, GKI is entitled to recovery of its attorneys' fees and costs associated with enforcement of the Financing Agreement.

## COUNT II
## BREACH OF CONTRACT – AREA REPRESENTATIVE AGREEMENT
## AND PRINCIPAL OWNER'S GUARANTY
### (by GKA against GenX and Lee)

57.     Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

58.     By way of the Area Representative Agreement, a duly-executed and valid contract existed between GKA, on the one hand, and GenX and Lee, on the other hand.

59.     The Area Representative Agreement included a Principal Owner's Guaranty, signed by Lee, that personally obligated Lee to GenX's obligations.

60.     GenX and Lee's actions, as described above, constitute material breaches of the Area Representative Agreement.

61.     As a direct and proximate result of GenX and Lee's breaches, GKA has been damaged in an amount to be proved at trial.

62.     As a direct and proximate result of GenX and Lee's breaches, and in accordance with the Area Representative Agreement and applicable law, GKA is entitled to recovery of its attorneys' fees and costs associated with enforcement of the Area Representative Agreement.

## COUNT III
### REQUEST FOR PRELIMINARY INJUNCTION–
### AREA REPRESENTATIVE AGREEMENT
### (by GKA against all Defendants)

63.     Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

64.     GKA's application for injunctive relief is authorized by Fed. R. Civ. P. 65.

65.     Pursuan to the Area Representative Agreement, GenX and Lee agreed that GKA would be entitled to injunctive relief in the case of any breach of the post-termination and/or unfair competition provisions contained in the Area Representative Agreement.

66.     By operating a directly (and openly) competitive business and utilizing GKA's affiliate's mark in a manner that confuses, misleads, and/or deceives the public in order to solicit business for Defendants (jointly and severally), and disclosing and using GKA's confidential information, Defendants are engaging and will continue to engage in competitive business operations that are in clear violation of the express terms of the Area Representative Agreement and in violation of the Lanham Act.

67.     As a result of Defendants' unauthorized and unlawful acts, GKA is irreparably harmed and will continue to suffer irreparable harm.

68.     For the foregoing reasons, GKA respectfully requests that the Court grant the following preliminary injunctive relief:

        a.     Enjoin Defendants GenX and Lee from breaching their non-competition covenants;

        b.     Enjoin Defendants from using any of the GKA (or affiliate) or any confusingly similar name, device, mark, service mark, trademark, trade name,

slogan, or symbol to obtain revenue for Defendants or any other individual or company that is not a franchised business of GKA;

c. Enjoin Defendants from using any of GKA's confidential information; and

d. Enjoin Defendants from tortiously interfering with the Area Representative Agreement.

69. GKA has a high likelihood of success on the merits on their claims, and it is probable that they will recover from Defendants, as (1) Defendants are openly and actively violating the Lanham Act; (2) Defendants GenX and Lee are openly, actively, and materially breaching the express terms of the valid and enforceable Area Representative Agreement; and (3) Defendants other than GenX and Lee are openly and actively tortiously interfering with GenX and Lee's performance under the Area Representative Agreement and are in possession of, and are using, GKA's confidential information.

70. Irreparable harm will result if a preliminary injunction is not issued because Defendants will continue to violate the Lanham Act, Defendants, GenX and Lee, will continue to materially breach the express terms of the valid and enforceable Area Representative Agreement, and Defendants (other than GenX and Lee) will continue to tortiously interfere with the Area Rerepsentative Agreement, which will

cause irreparable and irreversible harm to the goodwill and reputation that GKA spent significant time and money establishing.

71.     GKA has no other adequate remedy at law because each Defendant refuses to cease their or its material breaches of the express terms of the Area Representative Agreement and other tortious conduct.

72.     Defendants, GenX and Lee, waived any requirement that GKA post bond in Section 11.10 of the Area Representative Agreement.

73.     The injury to GKA outweighs any injury that may potentially be sustained by Defendants, collectively and/or each of them, as a result of the requested injunctive relief.

74.     Injunctive relief will not adversely affect the public interest.

75.     Defendants were served or are being served with notice of this application for injunctive relief.

## COUNT IV
## REQUEST FOR PRELIMINARY INJUNCTION–
## AREA REPRESENTATIVE AGREEMENT
### (by GKA against all Defendants)

76.     Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

77.     GKA's application for injunctive relief is authorized by Fed. R. Civ. P. 65.

78.     Pursuan to the Area Representative Agreement, GenX and Lee agreed that GKA would be entitled to injunctive relief in the case of any breach of the post-termination and/or unfair competition provisions contained in the Area Representative Agreement.

79.     By operating a directly (and openly) competitive business and utilizing GKA's affiliate's mark in a manner that confuses, misleads, and/or deceives the public in order to solicit business for Defendants (jointly and severally), and disclosing and using GKA's confidential information, Defendants are engaging and will continue to engage in competitive business operations that are in clear violation of the express terms of the Area Representative Agreement and in violation of the Lanham Act.

80.     As a result of Defendants' unauthorized and unlawful acts, GKA is irreparably harmed and will continue to suffer irreparable harm.

81.     For the foregoing reasons, GKA respectfully requests that the Court grant the following permanent injunctive relief:

    a.      Enjoin Defendants GenX and Lee from breaching their non-competition covenants;

    b.      Enjoin Defendants from using any of the GKA (or affiliate) Marks or any confusingly similar name, device, mark, service mark, trademark, trade

name, slogan, or symbol to obtain revenue for Defendants or any other individual or company that is not a franchised business of GKA

        c.      Enjoin Defendants from using any of GKA's confidential information; and

        d.      Enjoin Defendants from tortiously interfering with the Area Representative Agreement.

82.      GKA has a high likelihood of success on the merits on their claims, and it is probable that they will recover from Defendants, as (1) Defendants are openly and actively violating the Lanham Act;  (2) Defendants GenX and Lee are openly, actively, and materially breaching the express terms of the valid and enforceable Area Representative Agreement; and (3) Defendants other than GenX and Lee are openly and actively tortiously interfering with GenX and Lee's performance under the Area Representative Agreement and are in possession of, and is using, GKA's confidential information.

83.      Irreparable harm will result if a permanent injunction is not issued because Defendants will continue to violate the Lanham Act, Defendants, GenX and Lee, will continue to materially breach the express terms of the valid and enforceable Area Representative Agreement, and Defendants (other than GenX and Lee) will continue to tortiously interfere with the Area Rerepsentative Agreement, which will

cause irreparable and irreversible harm to the goodwill and reputation that GKA spent significant time and money establishing.

84.     GKA has no other adequate remedy at law because each Defendant refuses to cease their or its material breaches of the express terms of the Area Representative Agreement and other tortious conduct.

85.     Defendants, GenX and Lee, waived any requirement that GKA post bond in Section 11.10 of the Area Representative Agreement.

86.     The injury to GKA outweighs any injury that may potentially be sustained by Defendants, collectively and/or each of them, as a result of the requested injunctive relief.

87.     Injunctive relief will not adversely affect the public interest.

88.     Defendants were served or are being served with notice of this application for injunctive relief.

**COUNT V**
**ANTICIPATORY BREACH – PURCHASE AGREEMENT**
**(by GKAmerica against SGC)**

89.     Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

90.     By way of the Purchase Agreement, a duly-executed and valid contract existed between GKAmerica, on the one hand, and SGC, on the other hand.

91.     By way of its actions described above, SGC has repudiated the Purchase Agreement without a just excuse for such repudiation.

92.     As a direct and proximate result of SGC's repudiation, GKAmerica has been damaged in an amount to be proved at trial.

<u>**COUNT VI**</u>
**FEDERAL TRADEMARK INFRINGEMENT**
**(by GKAmerica against all Defendants)**

93.     Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

94.     Defendants are using GKAmerica's mark to identify the services as being associated with GKAmerica and its co-Plaintiff affiliates.

95.     GKAmerica did not consent to Defendants' use of GKAmerica's ONE KITCHEN Mark for the sale, offer, sale, or advertising of Defendants' goods or services, and Defendants' use is likely to cause confusion, cause mistake, and deceive the public.

96.     Defendants, therefore, are infringing GKAmerica's Mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

97.     Through their unlawful use and display of the mark, Defendants have profited, and GKAmerica has been damaged.

98.     Defendants' acts have been, and are being done, knowingly and intentionally to cause confusion, cause mistake, and/or to deceive.

99.     As a result, GKAmerica has suffered, and continues to suffer, irreparable injury and has incurred and continues to incur monetary damages in an amount to be determined at trial.

**COUNT VII**
**FEDERAL TRADEMARK DILUTION**
**(by GKAmerica against all Defendants)**

100.    Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

101.    The Mark is a famous trademark under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

102.    Defendants' action and conduct, as set forth above, constitute dilution of the famous Mark under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

103.    GKAmerica is entitled to injunctive relief under Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

104.    As a direct and proximate result of Defendants' wrongful conduct, GKAmerica has suffered, and will continue to suffer, irreparable damages to reputation and goodwill for which it has no adequate remedy at law.

105.    Pursuant to 15 U.S.C. § 1117, GKAmerica is entitled to recover damages from Defendants caused by their unlawful use of the Mark, in an amount to be determined at trial.

## COUNT VIII
## DEFEND TRADE SECRETS ACT
### (by GKA and GKI against all Defendants)

106. Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

107. The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*., provides a private civil action for misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

108. GKA and GKI own numerous trade secrets, including, but not limited to, its Operations Manual, training manuals, training programs, marketing strategies, marketing programs, and customer lists, related to products, proprietary contracts and contacts, and services used in interstate commerce.

109. Each of GKA and GKI's trade secrets derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person, who can obtain economic value from the disclosure or use of the information.

110. GKA and GKI's trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees and area representatives associated with GKA and GKI.

111. During the time period described above, GKA and GKI's trade secrets were disclosed to Defendants for the sole purpose of expanding the Ghost Kitchen and One Kitchen systems.

112. GKA and GKI have taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining their competitive advantage in the marketplace.

113. The aforementioned agreements explicitly provide for the protection of such trade secrets, as set forth herein.

114. GKA and GKI required, and Defendants agreed, that upon expiration, termination, or nonrenewal of the agreements – and particularly the Area Representative Agreement – they would never use, disclose, or permit the use or disclosure of GKA and GKI's trade secrets in any manner whatsoever.

115. Without authority or consent from GKA and GKI, Defendants are using the business know-how, customer lists, and customer contact information that they obtained while operating an improperly-competitive business for themselves, thereby misappropriating GKA and GKI's trade secrets.

116. Upon information and belief, Defendants used and are utilizing GKA and GKI's confidential system and materials after the termination of the franchise agreement, and GKA and GKI have not (and would not) consented to or authorized such use.

117. Defendants intentionally, and without GKA and GKI's permission or authorization, misappropriated and/or disclosed GKA and GKI's trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure GKA and GKI by, for example, causing GKA and GKI to lose any customers successfully solicited by Defendants.

118. As a direct and proximate result of the defendants' willful, improper, and unlawful disclosure and Defendants' willful, improper, and unlawful use of GKA and GKI's trade secrets, GKA and GKI have suffered and will continue to suffer irreparable injury.

119. Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of GKA and GKI's trade secrets should be enjoined from further disclosure or use of GKA and GKI's trade secrets.

120. Defendants' conduct in misappropriating GKA and GKI's trade secrets was, and continues to be, willful and malicious, warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C) and an award of reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

## COUNT IX
## UNFAIR COMPETITION
### (by GKAmerica against all Defendants)

121.   Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

122.   Defendants have engaged, and will continue to engage, in illegally using and displaying GKAmerica's Mark in the operation of a improperly-competitive in violation of the Lanham Act.

123.   Defendants improperly used, and will continue to use, GKAmerica's confidential information in furtherance of the operation of their competitive business.

124.   Defendants have, and will continue to, unfairly profit from using GKAmerica's Mark and good will to confuse, mislead, and/or deceive current and prospective GKAmerica (or affiliate) customers into obtaining goods and services from Defendants' now-competitive business.

125.   Through their actions, Defendants are intentionally attempting to deceive GKAmerica's current and prospective customers and contacts for Defendants' business gain.

126.   As a direct and proximate result of Defendants' actions, GKAmerica has suffered, and will continue to suffer, irreparable injury and is entitled to monetary damages in an amount to be determined at trial.

## COUNT X
## TORTIOUS INTERFERENCE – FINANCING AGREEMENT
### (by GKI against GenX, GenX Int'l, and Tran)

127.  Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

128.  The Financing Agreement is a valid and enforceable contract.

129.  Defendants, GenX, GenX Int'l, and Tran, knew of the existence of the Financing Agreement, as they are intimately involved in the aforementioned conduct.

130.  GenX, GenX Int'l, and Tran engaged in the intentional and improper conduct described herein, which induced SGC, SSP, and Lee to breach various provisions of the Financing Agreement.

131.  As a result of GenX, GenX Int'l, and Tran's tortious interference, SGC, SSP, and Lee breached the Financing Agreement.

132.  Defendants GenX, GenX Int'l, and Tran's tortious interference caused GKI to suffer irreparable injury and GKI will continue to suffer irreparable injury unless GenX, GenX Int'l, and Tran are enjoined from further tortious interference with SGC, SSP, and Lee's compliance with the terms of the Financing Agreement.

133.  As a direct result of ndants GenX, GenX Int'l, and Tran's tortious interference, GKI has suffered and will continue to suffer damages in an amount to

be proven at trial, including, but not limited to, compensatory damages, consequential damages, and disgorgement of SGC, SSP, and Lee's profits, if any.

134.  Defendants GenX, GenX Int'l, and Tran intentionally and maliciously caused SGC, SSP, and Lee to violate the provisions of the Financing Agreement.

135.  Because GenX, GenX Int'l, and Tran maliciously interfered with SGC, SSP, and Lee's compliance with the Financing Agreement, GKI is entitled to punitive damages.

**COUNT XI**
**TORTIOUS INTERFERENCE – AREA REPRESENTATIVE AGREEMENT**
**(by GKA against all SGC, SSP, GenX Int'l, and Tran)**

136.  Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

137.  The Area Representative Agreement is a valid and enforceable contract.

138.  Defendants, SGC, SSP, GenX Int'l, and Tran, knew of the existence of the Area Representative Agreement, as they are intimately involved in the aforementioned conduct.

139.  SGC, SSP, GenX Int'l, and Tran engaged in the intentional and improper conduct described herein, which induced GenX and Lee to breach various provisions of the Area Representative Agreement.

140.  As a result of SGC, SSP, GenX Int'l, and Tran's tortious interference, GenX and Lee breached the Area Representative Agreement.

141. Defendants SGC, SSP, GenX Int'l, and Tran's tortious interference caused GKI to suffer irreparable injury and GKA will continue to suffer irreparable injury unless SGC, SSP, GenX Int'l, and Tran are enjoined from further tortious interference with GenX and Lee's compliance with the terms of the Area Representative Agreement.

142. As a direct result of ndants SGC, SSP, GenX Int'l, and Tran's tortious interference, GKA has suffered and will continue to suffer damages in an amount to be proven at trial, including, but not limited to, compensatory damages, consequential damages, and disgorgement of GenX and Lee's profits, if any.

143. Defendants SGC, SSP, GenX Int'l, and Tran intentionally and maliciously caused GenX and Lee to violate the provisions of the Area Representative Agreement.

144. Because SGC, SSP, GenX Int'l, and Tran maliciously interfered with GenX and Lee's compliance with the Area Representative Agreement, GKA is entitled to punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray for the following relief against Defendants:

1.  For the following injunctive relief:

    A.  Enjoining GenX and Lee from breaching their non-competition covenants;

    B.  Enjoining Defendants from using any of the GKAmerica-owned (or affiliate-owned) Marks or any confusingly similar name, device, mark, service mark, trademark, trade name, slogan, or symbol to obtain revenue for Defendants or any other individual or company that is not a franchised business of Plaintiffs;

    C.  Enjoining Defendants from using any of Plaintiffs' confidential and/or proprietary information;

    D.  Enjoining GenX, GenX Int'l, and Tran from interfering with the Financing Agreement; and

    E.  Enjoining SGC, SSP, GenX Int'l, and Tran from interfering with the Area Representative Agreement.

2.  For an accounting of Defendants' revenues and profits for all sales made since June 1, 2023;

3.     For a monetary award against Defendants in excess of $75,000, to be proven at trial, including, but not limited to compensatory damages, expectancy damages, pjunitive damages,a and disgorgement of profits;

4.     For a monetary award against Defendants for Plaintiffs' attorneys' fees and costs, in an amount to be proven at trial;

5.     For pre- and post-judgment interest; and

6.     For other such reliefa s the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs respectfully request a trial by jury in this action.

Dated:     April 5, 2024                                    THE FRANCHISE FIRM LLP
           Chadds Ford, Pennsylvania

                                                           */s/ Evan M. Goldman*
                                                           Evan M. Goldman, Esquire
                                                           225 Wilmington West Chester Pike
                                                           Suite 200
                                                           Chadds Ford, Pennsylvania 19317
                                                           Tel: 215-965-1553

                                                           *Attorneys for Plaintiffs*